UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARIE WEAVER, | ) | CASE NO. 5:12-CV-391 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF TWINSBURG, OHIO, | ) | MEMORANDUM OF OPINION |
| et al., | ) | AND ORDER |
| | ) | |
| Defendants. | ) | (Resolves Doc. 36, 48, 55) |
| | ) | |

This matter comes before the Court on a motion for summary judgment filed by Defendants City of Twinsburg, Katherine Procop, and Clayton Morris.[1]  Doc. 36.  Plaintiff Marie Weaver has opposed the motion, and Twinsburg has replied.  Weaver has also sought to strike (Doc. 48) exhibits attached to the reply brief and sought leave to offer supplemental authority. Doc. 55.  The motion for leave to offer new authority is GRANTED.  The motion to strike (Doc. 48) is DENIED AS MOOT.  The Court's decision to GRANT summary judgment (Doc. 36) has not considered those exhibits attached to the reply brief.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Weaver was hired by Twinsburg as a Deputy Clerk of City Council on November 13, 2006.  In January of 2008, Weaver was promoted to Acting Clerk of Council, and on March 8, 2008, she was officially named as Clerk of Council.  As Clerk of Council, Weaver was responsible, in some part, for fulfilling public record requests, for updating Council's agendas, and for submitting some ordinances to the proper state bodies.

---

[1] Procop and Morris have since been dismissed as defendants herein.

Weaver had been Clerk for roughly three months when Council passed an ordinance that allowed for levying an annual fee related to motor vehicle licensing.  Weaver was charged with providing this ordinance to the Ohio Department of Public Safety.  On July 29, 2008, that Department informed Weaver that the ordinance had been received after the July 1st deadline and therefore Twinsburg could not begin collection until 2010 instead of its intended start date of 2009.  It is undisputed that this caused a loss of revenue of roughly $86,000.  At the time the error was learned of there appeared to be some dispute over the allocation of blame with Mayor Katherine Procop blaming Weaver, and several councilmen believing that the Finance Director had voluntarily taken responsibility for ensuring the ordinance was timely submitted.

In addition to failing to timely submit the ordinance, Weaver was also *accused* of insubordination during a meeting with Mayor Procop on October 16, 2008.  An administrative assistant that overheard portions of the conversation indicated that she had "never heard any employee ever talk to any Mayor or City Manager like that."  Doc. 36-12.  In stark contrast, Weaver contends that she remained professional throughout the encounter and was unfairly attacked by Mayor Procop.

During the executive session of the next Council meeting, on October 28, 2008, the Council discussed the missed filing deadline and Weaver's alleged insubordination.  Council agreed at that time to refrain from taking any action until Weaver's six month review was completed on October 31 and until they had the opportunity to speak to legal counsel about options.  At that time, the next scheduled Council meeting was set for November 18, 2008.

On November 14, 2008, Twinsburg Law Director David Maistros instructed Weaver to amend the Council meeting agenda to include an executive session for discussing "personnel issues."  On November 18, 2008, the day of the scheduled Council meeting, Weaver's counsel

emailed Mayor Procop to inform her that Weaver had contacted the EEOC regarding a racial discrimination claim.  The email indicates that Council members would receive courtesy copies providing them the same information regarding Weaver's contact with the EEOC.

Council went forward with the scheduled executive session and once again discussed the missed filing deadline and Weaver's alleged insubordination.  Ultimately, Council determined that Weaver should receive a pre-disciplinary hearing before any punishment was imposed. Council then appointed Frank Beni, the Chair of Twinsburg's Civil Service Commission, to preside over the hearing.  The hearing was held on November 25, 2008, and thereafter Beni concluded that Weaver had been insubordinate and that there was cause for Twinsburg to take corrective action.  Council then offered Weaver the choice of a two-day suspension or enrollment in an Employee Assistance Program.  Weaver chose the suspension.

Weaver served her suspension in December of 2008 and returned to work without incident.  However, in early 2009, Maistros' assistant relayed a portion of a phone conversation in which she overheard Weaver tell the other individual that she would send them a copy of one of Maistros' legal opinions.  Maistros then utilized software installed by Twinsburg known as Barracuda that allowed him to search through old emails on Twinsburg's server.  Through this search, Maistros learned that Weaver had supplied a substantial amount of documents to Marcella "Sally" Gaydosh.  This fact concerned Maistros because Gaydosh had frequently litigated against Twinsburg.

Maistros continued his investigation of Weaver's emails and found that between November of 2008 and early March of 2009, Weaver and Gaydosh had exchanged roughly 120 emails.  Maistros concluded through his review that while Weaver had responded to numerous

public record requests, she had also provided numerous documents that had not ever been requested through a public records request.

The first Council meeting that occurred following Maistros' discovery was held on March 10, 2009.  However, prior to that hearing, on February 24, 2009, Weaver filed a retaliation charge and perfected her racial discrimination charge with the EEOC.  Maistros claims to have learned of the charges on March 6, 2009, while Councilman Morris indicated that he may have learned of the charges a day earlier on March 5, 2009.  Also on March 6, 2009, Maistros had requested that an executive session be added to the March 10, 2009 Council meeting to discuss personnel issues.  For that session, Maistros prepared a packet of all of the emails between Weaver and Gaydosh.

During the executive session, Council reviewed the packet of information and spoke with Maistros about their content.  Council then unanimously determined that Weaver should be terminated.  Council was then provided with pre-prepared termination letters that were signed and delivered to Weaver the following day.

In her suit, Weaver contends that Twinsburg retaliated against her on both occasions that she contacted the EEOC.  She contends that her suspension was retaliation for her first contact and that her termination was the result of her second contact.  In response, Twinsburg contends that no retaliation occurred and that Weaver was properly disciplined and terminated.  The matter now appears before this Court on Twinsburg's motion for summary judgment.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(a).

The initial burden of showing the absence of any "genuine issues" belongs to the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing former Fed.R. Civ.P. 56(c)).

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* (quoting former Fed.R. Civ.P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary burdens. *Id.* at 252. Moreover, the Court must view a summary judgment motion "in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Once the moving party has satisfied its burden of proof, the burden then shifts to the non-moving party. The non-moving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). Accordingly, summary judgment analysis asks whether a trial is necessary and therefore is appropriate when there are no genuine issues of fact. *Anderson,* 477 U.S. at 250.

To establish a prima facie case of retaliation, Weaver must demonstrate by a preponderance of the evidence that (1) she engaged in a protected activity under Title VII, (2) Weaver's protected activity was known to Twinsburg, (3) Twinsburg took adverse employment actions against Weaver, and (4) there was a causal connection between the adverse employment action and the protected activity. *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013). "The burden of establishing a prima facie case in a retaliation action is not onerous, but one easily

met." *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 523 (6th Cir. 2008) (internal quotation

marks omitted). If Weaver establishes a prima facie case, Twinsburg then has the burden of

production and must articulate a legitimate, nondiscriminatory reason for its action. *Fuhr v.*

*Hazel Park School Dist.*, 710 F.3d 668, 674 (6th Cir. 2013). "If a defendant successfully

produces such a legitimate reason, then the burden of production returns to the plaintiff to

demonstrate by a preponderance of the evidence that the proffered reason was a mere pretext for

discrimination." *Id*. at 675. Furthermore, the United States Supreme Court recently clarified that

a Title VII plaintiff must demonstrate "but for" causation to sustain a retaliation claim.  *See Univ.*

*of Tex. Southwestern Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2013 WL 3155234, at * 14 (June 24,

2013).

> "One way by which a plaintiff can demonstrate a causal connection is to show
> close temporal proximity between the adverse employment actions and the
> protected activity." *Taylor*, 703 F.3d at 339. But a prima facie case based on
> temporal proximity alone requires a short period of time between the protected
> activity and the adverse employment action, "usually less than six months."
> *Nguyen v. City of Cleveland*, 229 F.3d 559, 567 (6th Cir. 2000) (internal quotation
> marks omitted). As this Court noted in *Mickey*, supra:
>
>> Where an adverse employment action occurs very close in time
>> after an employer learns of a protected activity, such temporal
>> proximity between the events is significant enough to constitute
>> evidence of a causal connection for the purposes of satisfying a
>> prima facie case of retaliation. But where some time elapses
>> between when the employer learns of a protected activity and the
>> subsequent adverse employment action, the employee must couple
>> temporal proximity with other evidence of retaliatory conduct to
>> establish causality.
>
> 516 F.3d at 525.

*Nicholson v. City of Clarksville*, 2013 WL 3746098, at *12 (6th Cir. July 17, 2013).

## B. Weaver's Two-Day Suspension

Weaver contends that her suspension was unlawful retaliation, asserting that she "was summoned to a pre-disciplinary meeting, within 2 days of her attorney contacting Mayor Procop regarding claims of race discrimination." Doc. 42 at 15.  The Court finds it unlikely that Weaver has satisfied her prima facie case with respect to this claim.  First, while Weaver contends that she alerted Mayor Procop of her EEOC proceedings, the record does not contain evidence that any of the decision makers – the City Council members – were aware of the proceedings at the time the predisciplinary hearing was scheduled.  *See Warf v. U.S. Dept. of Veterans Affairs*, 713 F.3d 874, 880 (6th Cir.2013) (finding that the plaintiff had not established a prima facie case of retaliation where failure to promote occurred one month after the plaintiff's protected activity, because "only one of the supervisors [who had knowledge of the protected activity] was on the selection committee for the position and the rest of the selection committee did not have any knowledge of her complaint[,]" and "the selection committee considered Warf for the position....").  Additionally, discipline was recommended by Beni, a neutral third party appointed by counsel, who was also unaware of the EEOC proceedings.  As such, it is unlikely that Weaver demonstrated the second element of her prima facie case – Twinsburg's knowledge of her protected conduct.

However, assuming arguendo that this prong was met, it is also unlikely that Weaver satisfied her burden to demonstrate a causal connection between her protected activity and her discipline.  The Court acknowledges that the short temporal proximity herein *could* be sufficient to satisfy this prong.  However, the evidence also reflects that no mention of Weaver's EEOC proceedings was ever made during the disciplinary process. Furthermore, Weaver herself conceded that *some* form of discipline was appropriate for the missed deadline; she simply

disagreed with the timing and severity of the discipline.  Finally, while Weaver disagrees with the conclusion that she was insubordinate, Council was presented with evidence from a neutral third party in Beni that she was in fact insubordinate.  Thus, it is unlikely that she has satisfied even her minimal burden required for a prima facie case of retaliation.

Again, however, assuming arguendo that her prima facie case has been satisfied, Twinsburg has clearly met its burden of providing a legitimate, non-discriminatory reason for Weaver's suspension – her missed deadline and her insubordination.  The burden then again reverts to Weaver to demonstrate pretext.

To demonstrate pretext, Weaver is required to show either: "(1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate the decision; or (3) that they were insufficient to motivate the employment decision."  *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 184 (6th Cir. 2004) (citing *Manzer v. Diamond Shamrock Chems*. Co., 29 F.3d 1078, 1084 (6th Cir. 1994)).  With respect to this discipline, Weaver does not argue that the proffered reasons had no factual basis, that the proffered reasons did not motivate the decision, or that they were insufficient.  Instead, Weaver contends that the delay between the missed deadline and her dismissal should give rise to an issue of fact.  Weaver has offered no legal authority for this proposition.

Furthermore, Weaver ignores numerous facts when suggesting that such an inference should arise.  First, she ignores that her suspension was predicated upon both the missed filing deadline and her alleged insubordination.  Her alleged insubordination occurred on October 16, 2008 and it was discussed at the very next Council meeting on October 28, 2008.  Moreover, Council did not simply decline to discipline her.  Instead, it appointed a neutral to preside over a

8

predisciplinary hearing. Upon receiving the neutral's recommendation, counsel acted immediately.

Additionally, even if the Court were only considering the missed deadline issue, Weaver ignores that Council was in summer recess for nearly three months following that missed deadline. Accordingly, her suggestion that there was a "four month delay" between her conduct and the discipline has little to no factual support. In any event, it does not generate an issue of fact surrounding pretext. As a result, any retaliation claim involving Weaver's suspension fails as a matter of law.

### C. Weaver's Termination

Weaver also claims that her termination was the result of unlawful retaliation. Once again, the Court disagrees.

Assuming arguendo that Weaver has satisfied her prima facie case with respect to her termination, the Court turns to Twinsburg's proffered nondiscriminatory reason for termination. Specifically, Weaver was terminated for poor job performance. Twinsburg offered evidence that Weaver had improperly responded to public records requests and had actively provided documents to Gaydosh without *any* request. The Court finds that Twinsburg has satisfied its burden of providing a legitimate, non-discriminatory reason for Weaver's termination.

Weaver contends that Twinsburg's reasons are pretextual, asserting numerous arguments. In that regard, the Court first rejects Weaver's contentions that an inference of retaliation should be generated because Twinsburg gave inconsistent reasons for her termination. In support, Weaver relies on *Griffin v. Finkbeiner*, 689 F.3d 584, 596 (6th Cir. 2012). However, *Griffin* merely held that evidence of such inconsistencies could be used to demonstrate that the proffered reasons did not actually motivate the decision or had no basis in fact. Thus, *Griffin* simply

employed the same pretext standard set forth above.  More importantly, however, is the fact that Weaver cannot point to any inconsistencies.

Weaver appears to contend that it was inconsistent for Twinsburg to terminate her for poor job performance and then later "switch" its reason to include the improper handling of the public records requests.  However, Weaver herself admits that properly fulfilling these requests was within her job duties.  As such, "poor job performance" would certainly include the failure to properly fulfill these requests.  The Court, therefore, finds no inconsistent reasoning offered by Twinsburg.

Weaver also appears to contend that Twinsburg's legitimate reason is pretextual because Twinsburg cannot prove that she disclosed documents that were somehow exempt from disclosure.  In so doing, Weaver ignores that it was not simply the content of the documents that caused her termination.  Rather, it was the process that she failed to follow that led to her termination.

Once again, Weaver herself admitted that she was responsible for public records requests. She also admitted that she provided documents to Gaydosh without any such request:

> Q.  Were all the documents you provided to Ms. Gaydosh in response to public records requests?
>
> A. No.
>
> Q.  Why would you send her information that was not a public record?
>
> A.  We may have been discussing the issue or the matter or the item.

Doc. 36-3 at 26.  These documents included an internal, rather petty, dispute between the Finance Director and a Council member.  Weaver could not explain why this document was provided to Gaydosh.

Weaver, however, contends that her inability to state that it was in response to a public records request should be ignored.  Instead, she asks the Court to infer that it must have been in response because Weaver had indicated that other documents were provided to formal requests. Again, however, Weaver conceded that she had provided documents without any request.  So no inference is warranted.

Twinsburg also presented evidence that Weaver took no steps to ascertain whether or not documents were subject to privilege or redaction.  Weaver effectively claims "no harm no foul" by asserting that Twinsburg cannot prove that any privileged documents were disclosed.  Again, however, Weaver admitted that she would routinely check with the proper department for any requests that fell outside her knowledge.  When Gaydosh asked for legal bills, however, Weaver did not approach the Law Director to ascertain whether the request was proper.  She simply provided the documents.   Thus, it is once more Weaver's failure to follow the process – not the actual production – that gave cause for concern and discipline.

In the end, the following facts are undisputed.  Weaver had full knowledge that Gaydosh had litigated and was litigating against Twinsburg.   Time and time again, she provided documents to Gaydosh without ever even attempting to evaluate whether those documents were properly responsive to the request.  While she kept a log of any public record request that resulted in an actual document production, she provided Gaydosh numerous documents that never appeared in her log, while conceding that some documents were provided without any formal request.  Those facts provided Twinsburg a more-than-ample basis to find that Weaver's job performance was substandard and a more-than-ample basis to conclude that Council could no longer put their trust in her.

11

While Weaver has argued at length that she did not produce any document that could not have been legally produced through a public records request, she has entirely ignored the fact that she provided documents without such a request.  Furthermore, she has ignored that she took no steps before production to ensure that the response was legal and proper.  In that regard, she appears to blame a lack of training and a failure to label documents as confidential.  However, Twinsburg was well within its rights to find that Weaver's duties including fulfilling these requests and that therefore she should have sought out answers rather than simply blindly fulfilling the requests.  Accordingly, Weaver has fallen well short of demonstrating that Twinsburg's non-discriminatory reason for her termination was pretextual.

## III.  CONCLUSION

Twinsburg's motion for summary judgment is GRANTED.  Judgment on Weaver's claims is hereby entered in favor of Twinsburg.

**IT IS SO ORDERED.**


Dated:  _7/29/13_____                      __*/s/ John R. Adams*_____
                                             **JOHN R. ADAMS**
                                             **UNITED STATES DISTRICT JUDGE**